**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3305
_____

NORMAN D. CLAIBORNE,
Appellant

v.

SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY;
TIMOTHY DORETY, IN HIS INDIVIDUAL AND OFFICIAL CAPACITY AS
DIRECTOR OF MAINTENANCE FOR SEPTA
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-03011)
District Judge: Hon. Gerald A. McHugh
_____

Submitted Under Third Circuit LAR 34.1(a)
September 8, 2022

Before: JORDAN, HARDIMAN, and SMITH, *Circuit Judges.*

(Filed: September 13, 2022)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

**HARDIMAN**, *Circuit Judge*.

Norman Claiborne appeals the District Court's summary judgment on his civil rights claims against his former employer, the Southeastern Pennsylvania Transportation Authority (SEPTA), and supervisor, Timothy Dorety. We will affirm, essentially for the reasons stated by the District Court.

I

Claiborne is African American and worked as a Maintenance Custodian Driver for SEPTA at its Frankford Depot from 2005 until he was fired in early 2015. SEPTA fired Claiborne under the "no fault" attendance policy negotiated with his Union. He filed agency charges of discrimination and brought this action, claiming racial discrimination for failure to promote and termination, as well as retaliatory discharge, under federal, state, and local law. Following discovery, the District Court concluded that Claiborne repeatedly violated SEPTA's attendance policy and could not show he was passed over for open positions. *Claiborne v. SEPTA,* 2021 WL 5298981, at *1 (E.D. Pa. Nov. 15, 2021). The District Court characterized the evidence of racial animus to be "minimal" and granted summary judgment to SEPTA and Dorety in a thorough and careful opinion after ample discovery. *Id.*

Claiborne appeals the District Court's disposition of all three of his claims. He contends that he made out prima facie cases for failure to promote and retaliatory discharge. He also argues that the reason for his termination was a pretext for racial discrimination.

II[1]

A

We begin with Claiborne's claim of racial discrimination for failure to promote

him to General Helper/Fueler (called "Fueler" for short). We agree with the District

Court that Claiborne cannot establish a prima facie case of discrimination. *Claiborne*,

2021 WL 5298981, at *4–5. No evidence shows that Claiborne applied for an available

Fueler position at SEPTA that was filled by a member of another race or remained open.

*See* 42 U.S.C. § 2000e *et seq.*; *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

(1973) (outlining the prima facie race discrimination requirements); *Gunby v. Pa. Elec.

Co.*, 840 F.2d 1108, 1115 (3d Cir. 1988) (requiring evidence the desired position was

given to a member of another race); *see also Jones v. SEPTA*, 796 F.3d 323, 325–27 (3d

Cir. 2015) (applying Title VII framework to Pennsylvania Human Relations Act claims).

By 2009 Claiborne had passed a test to qualify to become a Fueler. He alleged that

he applied for a Fueler position in December 2013, but the record shows otherwise.

Claiborne did sign up for a "training opportunity" in 2013. App. 349. But SEPTA

explained there were no open Fueler positions between 2010 and 2014, in part because

management sought to trim an overstaffed workforce. Claiborne conceded that point,

acknowledging that "[b]etween '10 and '14, there were no open positions" for Fueler—

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 1331, 1367. We have jurisdiction under 28 U.S.C. § 1291. We review the summary judgment de novo, *Mylan Inc. v. SmithKline Beecham Corp.*, 723 F.3d 413, 418 (3d Cir. 2013), and view the evidence in the light most favorable to Claiborne, *Waldron v. SL Indus., Inc.*, 56 F.3d 491, 496 (3d Cir. 1995).

the position for which he was qualified. App. 379. That concession dooms his failure-to-promote claim at step one of the *McDonnell Douglas* test.

B

We next turn to Claiborne's claim that SEPTA terminated him because of his race. We agree with the District Court that Claiborne failed to show discriminatory motive. *See Claiborne*, 2021 WL 5298981, at *8–10.

SEPTA carried its "relatively light burden" to show a legitimate nondiscriminatory reason for Claiborne's firing. *See Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994). In 2008 Claiborne was fired for sleeping on the job. But after his union filed a grievance, he was reinstated. Despite that close call, Claiborne repeatedly violated SEPTA's attendance policy. He accumulated further disciplinary points and was suspended in 2011, before being fired again in 2012. His Union again went to bat for him and got Claiborne reinstated under a "last chance agreement." App. 360–61. Yet Claiborne continued to violate the attendance policy in October and November 2014, which prompted SEPTA to fire him a third time.

To avoid summary judgment, Claiborne had to show that SEPTA's proffered legitimate nondiscriminatory reason for the termination—attendance policy violations—was pretextual, or otherwise show discrimination to be the real reason for his termination. *See Ali v. Woodbridge Twp. Sch. Dist.*, 957 F.3d 174, 181 (3d Cir. 2020); *Fuentes*, 32 F.3d at 764.

Claiborne alleged generally that African-American employees faced a racially discriminatory work environment, where SEPTA disciplined them disparately, denied

4

them positions, training, and overtime available to white employees, and retaliated against them for reporting racism. According to the District Court, Claiborne relied on "vague assertions" to express a belief of discrimination, rather than specific instances of discrimination or dissimilar treatment. *Claiborne*, 2021 WL 5298981, at \*6; *see, e.g.*, App. 387 (Claiborne testifying, "I believe I received less overtime than a bunch of the Caucasian gentlemen that were there," but not citing names or positions of the employees, or that he was denied overtime). The record supports that assessment and the Court's summary judgment. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006).

Claiborne also tries to show pretext by establishing a pattern of past discrimination. *See Simpson v. Kay Jewelers*, 142 F.3d 639, 645 (3d Cir. 1998) (citing *Fuentes*, 32 F.3d at 765). But this theory also fails. Claiborne argues with some specificity that SEPTA's disciplinary point system has been applied in a discriminatory fashion. He cites SEPTA's racially disparate assessment of disciplinary points for absences during a snowstorm in February 2014. But the record does not show that his selected white comparators were similarly situated to him. As for those putative comparators, there is no record evidence about the quality and context of their misconduct, their positions, or the identities of their supervisors. *Claiborne*, 2021 WL 5298981, at \*9 ("At most, Claiborne has alleged his *belief* that white people were not disciplined without citing any evidence."); *see Simpson*, 142 F.3d at 645–46 (holding that evidence of a single comparator is not considered in a vacuum).

5

Because SEPTA's justification for firing Claiborne—attendance policy violations—was supported by the evidence and Claiborne has not rebutted that justification, his discriminatory firing claim fails. *See Keller v. Orix Credit All., Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997).

C

Finally, Claiborne claims his termination was retaliation for filing a race discrimination complaint with the Pennsylvania Human Rights Commission and Equal Employment Opportunity Commission. Claiborne argues the two months between his administrative complaints and the assessment of disciplinary points is "unusually suggestive" of retaliation. Claiborne Br. 35–36. But as the District Court recognized, *Claiborne*, 2021 WL 5298981, at *10–11, the two-month gap between Claiborne's complaints and his firing is not unusually suggestive of retaliatory animus. *Compare Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) (finding a span of two months insufficient to show a causal link), *with Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989) (finding a span of two days unusually suggestive and evidence of a causal link). The testimony from Claiborne's coworkers describing retaliatory action after complaints of racism does not help him either. We agree with the District Court that this testimony is "vague and couched in generalities" and insufficiently analogous to

Claiborne's own unique and well documented employment circumstances. *Claiborne*, 2021 WL 5298981, at *11.

*     *     *

For the reasons stated, we will affirm the District Court's summary judgment for SEPTA and Dorety.